Lois JOHNSON, etc., Plaintiff,

v.

MONTGOMERY COUNTY SHERIFF'S DEPARTMENT; et al., Defendants.

Civ. A. No. 82–717–N.

United States District Court,
M.D. Alabama, N.D.

Jan. 8, 1985.

Joan Van Almen, Montgomery, Ala., for plaintiff.

Robert C. Black, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for Class Members Gayle, Hatfield, Stovall, Hidle, Chambliss, Robinson, Burrows and Jenkins.

Henry C. Chappell, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for defendants.

ORDER

MYRON H. THOMPSON, District Judge.

This is a class action lawsuit alleging sex discrimination in employment at the Sheriff's Department of Montgomery County, Alabama. The cause is now before the court on the parties' joint request for approval of a proposed settlement. The court concludes that approval is warranted.

I.

Named plaintiff Lois Johnson, a female deputy sheriff in Montgomery County, brought this lawsuit pursuant to 42 U.S. C.A. §§ 2000e through 2000e–17, known as Title VII of the Civil Rights Act of 1964, as amended. Johnson alleged sex discrimination in a wide range of employment practices. On September 12, 1983, the court

certified the cause as a class action according to Fed.R.Civ.P. 23(a) and (b)(2).[1] The court's memorandum opinion regarding class certification described the plaintiff class, the defendant Sheriff's Department and Johnson's allegations in detail.

Some time after class certification, the court learned from counsel that they had agreed on a proposed settlement and so ordered that they submit necessary settlement papers. The court provisionally approved the parties' joint order and decree[2] on October 16, 1984. The parties then notified plaintiff class members of the proposed settlement. On January 4, 1985, the court held a hearing regarding the proposed settlement. Eight plaintiff class members presented a single joint objection at this hearing.

The proposed settlement provides for widespread, specific opportunities for present and prospective female employees of the Sheriff's Department. The department offers to change its job descriptions and advertising efforts to recruit more women. It promises new hiring policies, subject to class approval, and commits itself to hiring women for the next six available positions and thereafter by a one-third ratio until twenty-five percent of deputy sheriffs are women. Similarly, the department will propose new promotion policies, subject to class approval, and reevaluate a previous promotion round in order to give female employees another, better chance; evidence of adverse impact against women will trigger further action with a possible court role. Finally, the proposed settlement provides detailed safeguards for equal treatment of women in job and shift assignments and transfers. In all areas, the department binds itself to federal guidelines and ongoing consultations with class counsel.

In addition to these class-wide provisions, the proposed settlement offers individual compensation to all class members. Two class members are to be promoted, including the named plaintiff with back pay. The other class members are to receive varying shares of a monetary fund.

The single objection to the proposed settlement concerned the allocation of this monetary fund. Those objecting questioned the basis of the allocation. By written response and a statement at the hearing, class counsel explained that the allocation was based on her calculation of certain factors in each individual case. These factors included: the history of alleged sex discrimination in the Sheriff's Department, worse in recent years in her judgment; class members' tenure in and, if applicable, date of departure from the department; class members' efforts to attain promotion; the department's steps in giving class members additional responsibility without promotion or compensation. For their part, those objecting stressed that they did not challenge, but supported the proposed settlement as a whole.

## II.

■ Courts have stated many times that voluntary settlement is the preferred means of resolving class action employment discrimination disputes. *See, e.g., Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir.1983); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1215 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). However, it is well recognized that the class action "settlement process is more susceptible than adversarial adjudications to certain types of abuse. The interests of lawyer and class may diverge, as may the interest of different members of the class, and certain interests may be wrongfully compromised, betrayed, or 'sold out' without drawing the attention of the court." *Pettway,* 576 F.2d at 1169. Therefore, the "[p]roponents of class action settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Holmes,* 706 F.2d at 1147. At issue are the equities between the parties,

---

1. *Johnson v. Montgomery County Sheriff's Department,* 99 F.R.D. 562 (M.D.Ala.1983).

2. See Appendix A.

as well as among the plaintiff class members. *In re Chicken Antitrust Litigation*, 669 F.2d 228, 238 (5th Cir.1982) (Unit B).

Here, no one contends that the proposed settlement is in any way inequitable as between the Sheriff's Department and the plaintiff class, nor would there appear any basis for such a contention. As described, the proposed settlement offers class members impressive opportunities in all employment areas. These are not vague avowals of good faith, but concrete commitments to specific measures. In addition, although the proposed relief is primarily class-wide and injunctive, every class member is to receive some individual compensation by promotion or remuneration.

The sole objection to the proposed settlement concerns the equities among the plaintiff class members, and this only as regards the less significant individual compensation, not the class-wide injunctive relief. The objectors have questioned the basis of the allocation of the monetary fund. They have maintained their objection after class counsel explained the basis of the allocation, though they stressed that they did not wish to upset the overall settlement.

■ In assessing a proposed settlement such as this, "[t]he trial court is entitled to take account of the judgment of experienced counsel for the parties." *Pettway*, 576 F.2d at 1215. "If the attorney's decision in the face of such disagreement [among the class members] affects each class member more or less equally, and no allegation is made that the rights of a definable minority group within the class were sacrificed for the benefit of the majority, the attorney's views must be accorded great weight...." *Id.* at 1216. Even where there is a "disparate distribution" favoring the named plaintiffs, "[t]he inference of unfairness may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate considerations." *Holmes*, 706 F.2d at 1148.

■ Here, the allocation of the monetary fund does not sacrifice the rights of a definable minority. The objectors have shown no criterion that class counsel may have applied to single them out for smaller shares. In fact, several of the objectors are to receive greater shares than others not objecting. That class members receive different amounts of course is not necessarily unfair. Equal shares are as suspect as unequal ones since class members are rarely identical.

It would appear that the named plaintiff Johnson is to receive greater compensation than other class members. Although her monetary award consists of back pay in conjunction with her promotion to sergeant, rather than the straightforward award going to most other class members, she nevertheless will receive more than the only other class member to be promoted who gets no back pay, and the amount of her back pay award is significantly greater than any straightforward award. However, even applying the "careful judicial scrutiny" appropriate to a disparate distribution favoring the named plaintiff, the court sees no reason to disapprove the proposed settlement.

The court's concern that Johnson disproportionately benefits from the proposed settlement is dispelled first because no one objects to her individual compensation. At the hearing, the objectors made clear that they did not challenge Johnson's share. Second, individual compensation of class members is a minor aspect of the overall proposed settlement. Any extra benefit to Johnson is thus minimal overall. Third, class counsel stated that she calculated the allocation of individual compensation entirely on her own without Johnson's active participation and only sought her subsequent approval.

These same considerations also satisfy the court that the proposed settlement is fair, reasonable and adequate as regards the proposed allocation of the monetary fund among the other class members. The most significant feature of the proposed settlement is class-wide injunctive relief. There is no allegation or evidence of collusion between class counsel and those class members receiving greater shares. Final-

ly, the sole objection is quite narrow and limited. *See Women's Committee for Equal Opportunity v. National Broadcasting Co.,* 76 F.R.D. 173, 181–82 (S.D.N.Y.1977).

Most importantly, class counsel has shown that the allocation is "rationally based on legitimate considerations" such as would satisfy even the strictest scrutiny. *Holmes,* 706 F.2d at 1148. As described, class counsel explained her use of several factors in calculating the allocation. All these factors appear legitimate, and there are also no glaring omissions. Furthermore, class counsel stated that she examined the individual personnel files of all class members and spoke to many of them. Thus, unlike other counsel, she had considerable knowledge of the class members' individual claims. *See Holmes,* 706 F.2d at 1150. Since class counsel is experienced and able and, according to the court's observations, has prosecuted this lawsuit aggressively and diligently, the court credits her calculation of the allocation and her representation, joined by the defendants' counsel, that the proposed settlement is fair, reasonable and adequate.

While not wishing to upset the proposed settlement entirely, the objectors did propose an alternative allocation of the monetary fund. They suggested splitting the fund, which again does not include Johnson's back pay award, on a per capital basis. Of course, "[c]ourts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties." *Holmes,* 706 F.2d at 1160. However, the court notes that, were it to disapprove the proposed settlement and the parties to renegotiate another settlement that included the objectors' alternative allocation, the greatest increase in compensation that any class member would receive would be about two hundred thirty dollars. Such a result would by no means be assured, since the parties might not manage to reach another settlement, and the plaintiff class might lose some of the valuable injunctive relief that the present proposed settlement provides.

Settlement saves "not only ... the time, expense, and psychological toll but also avert[s] the inevitable risk of litigation." *United States v. City of Miami, Fla.,* 664 F.2d 435, 439 (5th Cir.1981) (Former 5th en banc). The court is not prepared to subject the parties to such risk because of a minor monetary disparity when the proposed settlement offers the plaintiff class so much more than money.

Accordingly, it is ORDERED that the objection to the proposed settlement be and it is hereby overruled, and that the proposed settlement be and it is hereby approved.

## APPENDIX A

### CONSENT ORDER AND DECREE

This action, filed on October 12, 1982, was brought by plaintiff Lois Johnson and on behalf of all past, present, and future female deputy sheriffs of the Montgomery County Sheriff's Department, and all present and future female applicants, alleging a pattern or practice of sex discrimination in employment in the Montgomery County Sheriff's Department. (hereinafter referred to as "defendant.") Plaintiff contends that defendants' alleged discriminatory conduct is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

Defendants Montgomery County Sheriff's Department, Mac Sim Butler, Willie McKitt, R.E. Singleton, and Calvin Huggins are defendants only in their official capacities as Sheriff or supervisory employees of the Sheriff and not in their individual capacities. Defendants deny that the named plaintiff or the class she seeks to represent have been discriminated against on the basis of sex in regard to recruitment, hiring, promotions, job conditions or otherwise in violation of Title VII.

On September 12, 1983, the court ORDERED, ADJUDGED and DECREED that the action be maintained and proceed as a class action, pursuant to Rule 23(b)(2) and defined the class as consisting of all past, present, and future female deputy sheriff employees of the Montgomery County Sheriff's Department and all present and

future female applicants for this position in the department.

WHEREAS plaintiff and defendants have taken extensive discovery and have had the opportunity to evaluate the respective positions;

WHEREAS plaintiff and defendants consent to the entry of this decree on the grounds that it will further the objectives of the aforementioned act, resolve the matter without time and expense of further litigation, and fully protect the interests of all the class members and defendants;

WHEREAS plaintiff and defendants further agree that this decree is not evidence of or premised upon a finding of systematic discrimination against plaintiff and class members.

NOW, THEREFORE, prior to the trial of this action and without the adjudication of law and fact herein and without this decree constituting evidence by either party as to any issue of fact or law herein, and upon consent of the parties hereto, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. GENERAL PROVISIONS

1. This court has jurisdiction over the subject matter of this action and the parties hereto. The complaint states claims upon which relief may be granted under 42 U.S.C. § 2000e *et seq.*

2. The requirements of Rule 23 of the Fed.R.Civ.P. have been satisfied with the plaintiff Lois Johnson representing the class consisting of all past, present and future female "Deputy Sheriff" employees and all present and future female applicants. The department stipulates that this plaintiff also represents a class of future applicants for Correctional Officer, which is, at this time, an unclassified position.

3. This court specifically finds that the entry of this decree is in furtherance of the objectives of the Equal Employment Opportunity Act of 1972, and 42 U.S.C. § 2000e *et seq.*, and protects the rights of all interested class members. The court further finds that the class has been adequately represented by plaintiff and her attorney. The Montgomery County Sheriff's Depart-

ment, its agents, officers and employees and all persons in active concert or participation are hereby enjoined and restrained from discriminating on the basis of sex against any named plaintiff or class member and from failing to implement and comply with the enumerated provisions of this Decree.

4. Defendant shall not engage in or be a party to any act, policy or practice which has the purpose or effect of discriminating or retaliating in any manner against the plaintiff, any employee or former employee or any applicant for employment because that employee has furnished information or has participated in any respect in the prosecution of this action, or because the employee has made charges, testified, asserted a claim, or participated in any manner in the investigation or proceedings under 42 U.S.C. § 2000e *et seq.* or any regulations promulgated thereunder.

5. Defendants enter into this consent decree in good faith and will take all reasonable actions to accomplish the goals specified herein.

6. Defendants' objectives are to implement hiring and promotion procedures which when used either for screening, ranking or selection will have little or no adverse impact on female applicants seeking hiring or promotion within the Sheriff's Department. In accordance with this objective, defendants agree to utilize hiring and promotion procedures which are in conformity with the 1978 Uniform Guidelines on Employee Selection Procedures, 29 CFR § 1607, 1 *et seq.*, and which, when used either for screening, ranking or selection, will have little or no adverse impact on women seeking to be hired and promoted to ranking positions. With the exception of paragraph 4(D), the defendants are not required to strictly comply with remaining provisions of the uniform guidelines.

7. As used in this decree, the term "rank" shall mean any position in the Sheriff's Department above deputy sheriff.

8. As used in this decree, "applicant" shall refer to all persons who apply with the Montgomery City County Personnel

Department for the position of deputy sheriff or correctional officer.

9. As used in this decree, "department" shall refer to those supervisory officers who are responsible for implementing policies and practices.

10. The parties agree that any time after entry of this consent decree either party may apply to this court for an order which would enforce the terms of the consent decree, clarifications or instructions, and/or apply for any other relief which may be appropriate.

11. The provisions of this decree shall supercede any and all conflicting and inconsistent provisions in the Montgomery County Sheriff's Department Jail Administrative Regulation No. 107–78, Montgomery County Jail Rules and Regulations, the Montgomery County Jail Instruction Manual, or other publication of the Sheriff's Department.

12. This Decree shall become effective immediately upon the date of its entry by the court and shall remain in effect until October 1, 1988.

a. If any party, prior to October 1, 1988, has commenced proceedings either to seek compliance with this Decree or to seek other relief necessarily implementing this Decree, this court shall retain jurisdiction over this action until all issues relating to such proceedings have been resolved.

b. On October 1, 1988, this court shall terminate this decree automatically and without further formality unless the plaintiff, by motion, requests this court to conduct a hearing for the purpose of determining whether the defendants have fully implemented the provisions of this Decree.

13. Certain provisions of this Decree imply the co-operation and co-ordinated efforts of the Montgomery City-County Personnel Board (hereinafter MCCPB) and the Montgomery County Commission. The department agrees to take all actions necessary to obtain the appropriate authorizations and approvals of those entities to attain the objectives specified in this Decree. These entities will not be liable for any actions taken in efforts to effectuate the terms and objectives of this decree.

## RECRUITMENT

14. The department will engage in aggressive recruitment procedures which will include a systematic program to recruit female deputy sheriffs and correctional officers.

15. The department will engage in an effort to attract qualified females and males to serve as deputies and correctional officers. These efforts will include at a minimum the following:

a. To obtain any free advertising time through public service announcements or other time offered by the FCC for recruitment purposes.

b. Submit a budget request to the Montgomery County Commission each year for the next five years which will include a request for recruitment funds to include the following:

1. Television spots which will depict women deputies;

2. Radio spots which will include the voice of a female;

3. Development and distribution of poster advertisements which will include photographs of female and male deputies.

16. The department will request that MCCPB expand their mailing list utilized for employment notification to include any and all locations designated and submitted by the department to include but not be limited to area colleges and technical schools.

17. The department will request that the MCCPB change the employment notification for the position of "DEPUTY SHERIFF" as follows:

a. Add the following language under "Purpose of Examination:" "men and women will have equal opportunities to be appointed deputy sheriff and will be assigned duties and responsibilities without regard to sex. Salary and fringe benefits will be the same for both men and women."

b. Delete the following language under "Requirements of Work": "Knowledge of" and substitute "ability to learn"

c. Delete the word "strength"

d. Add under "Nature of the Work": "The job involves initial assignment to general duty jail work."

### III.  HIRING

18. Male and female applicants will have equal opportunity to be hired for the position of deputy sheriff pursuant to the provisions of 42 U.S.C. § 2000e *et seq.*, Title VII, Civil Rights Act of 1964, as amended.

19. The defendants agree to have as an objective the utilization of a hiring procedure which, when used for either screening or ranking, will have little or no adverse impact upon women seeking to be hired as deputy sheriffs. In accordance with that objective, defendants agree to utilize a hiring procedure which is in conformity with the 1978 *Uniform Guidelines* and which, in addition, when used either for screening, ranking or selection will have little or no adverse impact on women seeking to be hired.

20. In accordance with the above stated objective, defendants agree to develop such hiring procedure no later than six months from the signing of this consent decree. A written description of these procedures will be submitted to counsel for plaintiffs. Counsel will have 30 days to review the hiring procedure and be able to request from the defendants any information relevant to the proposed hiring procedure.

21. The department agrees that it will not consider military experience as a hiring qualification factor and will request that the Montgomery City County Personnel Board perform future ranking computations for eligibility registers accordingly. However, military experience may be considered if the applicant's military experience is related to law enforcement.

22. The department agrees to the following specified procedures, which will be incorporated in overall hiring practices.

a. A ranking officer assigned by the Sheriff will conduct the background investigation of all applicants listed on the eligibility roster sent by the Montgomery City-County Personnel Board.

b. A minimum of three of the five members of the Department Personnel Review Board will interview every applicant on the eligibility roster who presents him/herself and will then make a hiring recommendation to the Sheriff for final action.

c. All recommendations for hire or non-hire shall be made in writing and permanent records on each applicant will be maintained.

d. All Form 13's filed with MCCPB shall also be kept on permanent file in the administrative office of the department.

e. The department shall adopt standard interview questions which will be gender-neutral and will be equally applied to male and female applicants. Female applicants will not be asked to provide information different from that provided by male applicants.

f. All application procedures will be handled on a uniform basis with respect to background checks, telephone calls, and applicant contacts.

g. Background investigation checks will not include polygraph information from any state or local agency which contains non-job related information, specifically the sexual history or behavior of the applicant.

23. The department agrees to hire six female deputies from the first six budget-approved or vacant positions for deputy sheriff provided said positions are authorized, created, and funded by the Montgomery County Commission. To the extent permissible under procedures, laws, regulations or court orders applicable to and controlling the MCCPB, provided said board allows the same, the Department agrees to take the following actions.

a. All female applicant class members from the 1981 register will be contacted for interview for possible employment. Every applicant who presents herself for interview will be interviewed by the Department Personnel Review Board.

b. After all applicants have been interviewed, the Personnel Review Board will make six hiring recommendations.

c. If all six hiring selections are not made from this register, then the Department Personnel Review Board will contact and interview the next ten highest ranked female applicants from the 1983 register who present themselves for interview.

d. Thereafter, the department will hire one female out of every three applicants for available deputy sheriff positions until twenty-five percent of all deputy sheriff positions are held by females.

24. The Department agrees that twenty-five percent of all the budgeted correctional officer positions authorized, created and funded by the Commission will be filled by female applicants, provided qualified applicants are registered with and furnished to the department by MCCPB. The defendant will request that the MCCPB furnish the necessary certification registers including female applicants to accomplish this goal.

Nothing herein shall be construed to prohibit the timely opening and operation of the new jail facility. If the stated objective cannot be met, after good faith efforts, the department will be permitted to complete the hiring of "correctional officer" personnel. However the department will take necessary actions to accomplish this goal for future correctional officer positions authorized, created and funded by the Montgomery County Commission, until said goal of twenty-five percent female correctional officers is achieved.

## IV. DEPARTMENTAL PROCEDURES

### A. Personnel Files

25. The department will establish a written procedure which allows a deputy, upon reasonable request, to review his/her personnel file and to offer additions or corrections. This procedure will be explained to new and existing personnel.

26. Each deputy personnel file will include at a minimum the following:

1. Initial application

2. Results of employment investigations

* 3. Verification of training and experience

4. Salary benefits and information

* 5. Educational and professional certificates

6. Disciplinary actions

7. Transfer request forms

8. Training request forms

* These items to be included provided the employee furnishes the same to the department.

### B. Job Assignments

27. All routine and daily job assignments in all divisions of the department will be made without regard to gender. The exceptions to this rule are:

a. Strip searches (pat down searches if practical)

b. Situations which warrant that the privacy interests of the inmate must be protected

28. In either of the two above-stated exceptions, the deputy assignment may be made according to the gender of the inmate. These exceptions contemplate narrow and unusual circumstances.

29. The department will write post descriptions for every job assignment on that post which will describe the duties and responsibilities; and these descriptions will be distributed to every deputy.

### C. Shift Assignments

30. All deputies who waive an offered shift assignment must indicate the waiver in writing and place the waiver in his/her personnel file.

31. A minimum of one female deputy will be on duty in the jail for each of the three shifts.

### D. Transfers

32. Female deputies will have equal opportunity to compete with male deputies for any position within the Sheriff's Department. All division practices of the department will be in compliance with Title VII of the Civil Rights Act of 1964, as

amended, as applied to transfers within the department.

33. All new deputy employees will be deemed qualified to serve in any job or division of the department unless special qualifications for the deputy sheriff position have been designated. If special qualifications are necessary for service in any division, for example investigation duties, etc., the defendant agrees to develop written classification descriptions and specialization qualifications. These written classifications will be continuously posted in a central location. This provision shall not apply to jobs for which separate hiring registers are utilized, i.e., Nurse, I.D. Specialist, Deputy Sheriff-Steward, etc.

34. All deputies will be equally eligible to attain special training and education offered to employees of the department. Notices selected by the department for special training, educational or other professional services offered to employees of the department will be posted within five days of receipt in a central location in the jail and administrative division. These notices will remain posted until the date of the training or educational opportunity. A file of other non-posted notices will be maintained and available to employees for review upon reasonable request.

35. Defendants agree to develop a training request form. The form will provide a space for the Chief Deputy to describe the reason(s) for the grant or denial of any training request made by a deputy.

36. The department agrees to develop a transfer procedure for intra-departmental transfers which incorporates the following practices.

    a. Initial transfers from the jail will be based strictly on seniority and will not depend on any discretionary authority of the jail personnel. This provision will become effective upon the staff placement of thirty-four additional personnel in the new jail facility.

    b. Transfer request forms will be utilized for all divisions of the department and will include a statement by the approving authority as to the grant or denial of any request for transfer.

    c. All transfer request forms will be made part of the personnel file.

## V. PROMOTION

37. All promotional applications received for any opening announced internally shall be considered equally without regard to sex, pursuant to the provisions of 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended.

38. The defendants agree to have as an objective the utilization of a promotion procedure which, when used for either screening, ranking or selection, will have little or no adverse impact upon women seeking promotion to ranking positions. In accordance with that objective, defendants agree to utilize a promotional procedure which is in conformity with the 1978 Uniform Guidelines 29 CFR § 1607 et seq. and in addition, when used either for screening, ranking or selection will have little or no adverse impact on women seeking promotions.

39. In accordance with the above stated objective, defendants agree to develop for "ranking positions," a promotion procedure which: a) will be developed by the defendants no later than six months from the signing of this consent decree; b) will be submitted upon completion of the formulation of the promotion procedure to counsel for plaintiff. Counsel will have 30 days to review the promotion procedure and request from the defendants any relevant information concerning the procedure, and; c) if found objectionable by plaintiff's counsel, will be submitted upon completion of plaintiff's review to this court for approval on the basis of the above stated objectives.

40. To the extent that the co-operation of the MCCPB is required to obtain compliance with the stated objective, the defendants agree to make good faith efforts to obtain their co-operation.

41. Specifically, the department agrees to request that MCCPB recompute and recompile all ranking scores for deputies who applied for the 1983 Sergeant (field) position by giving equal point value to jail and field experience. The department will re-

quest that this practice be applied to future computation.

42. Ranking officers shall supervise both male and female deputies in all divisions of the department.

43. On October 1, 185, and thereafter on an annual basis, the defendants agree to provide to plaintiff's counsel a list of candidates for promotional selections which shall be reviewed to determine whether the selection procedure has an adverse impact on female applicants.

44. Adverse impact shall be determined by reference to the *Uniform Guidelines,* by comparing the number (by sex) of applicants with the number (by sex) of persons hired. For purposes of this decree, applicants "shall include all persons who fill out the application form with the Montgomery City County Personnel Department and were deemed qualified." Adverse impact shall be determined for each of the following groups of ranking personnel:
1) Sergeant
2) Lieutenant
3) Assistant Captain Chief Deputy
4) Captain
5) Assistant Jail Administrator
6) Jail Administrator

45. Adverse impact will be measured by the "four fifths rule" set forth in § 4(D) of the *Uniform Guidelines.*

46. If the parties agree, or the court finds, upon review of the information submitted pursuant to Paragraph 43, above, and upon review of other such information as may be submitted by either party, that the selection procedure described in Paragraph 39 above, has had an adverse impact, promotions thereafter shall be made under a method aimed at avoiding such adverse impact. If the parties cannot agree on a method for making such future promotions, the matter shall be submitted to the court for resolution. Upon such a submission to the court, no further promotions will be made until the parties have agreed in writing or the court has ruled upon the method to be used for making future promotions.

47. Class members listed in Exhibit "A" (attached hereto) will receive monetary awards in the designated amounts.

48. These deputies will be promoted:

a. Lois Johnson will be promoted to the rank of Sergeant (Jail), and will receive a seniority date of November 1, 1981. She will receive front pay at the rate of $70.00 per month until the promotions become effective, up to a maximum of twelve months.

b. Santina Jenkins will be promoted to the rank of Sergeant (Jail).

c. The above stated promotions will become effective provided said positions are authorized, created and funded by the Montgomery County Commission. The department will give priority to these budget requests over all other budget requests for promotional positions.

49. Said plaintiff and class members shall execute a general release with respect to any further liability on the part of the Montgomery County Sheriff's Department, the Sheriff, or any of his agents, officers, or employees regarding violations of Title VII of the Civil Rights Act of 1964, as amended, relating to any matters as employment, application, hiring, job assignments or promotions within the department or any other cause of action as set forth in the complaint or capable of allegation therein by amendment. This release shall not bar any action by any class member as to future liability for any matter not covered by the complaint or terms of this decree.

50. Upon review of the entire record, the court preliminarily finds that this Order and Decree is a fair, adequate and equitable resolution of this case to merit further consideration by this court, pursuant to Rule 23 of the Fed.R.Civ.P., after notice to the class and a settlement hearing to be conducted thereafter. The court directs that notice in the form of Exhibit "B" attached hereto be provided to the class as heretofore described, and that a settlement hearing be set for January 4, 1985, at 10 a.m., 4th floor Courtroom, United States Courthouse.

51. Copies of Exhibit "B" shall be posted on all bulletin boards in the Sheriff's Department which are used by employees.

52. Exhibit "B" shall be published in the Alabama Journal, the Montgomery Advertiser and the Montgomery Independent for four (4) consecutive weeks.

53. Copies of the Order and Decree will be available to class members in the administrative office of the Sheriff's Department and the Clerk's office of this court.

DONE THIS 16th day of October, 1984.

/s/ Myron H. Thompson
United States District Judge