Sallie WILLIAMS and Johnie
Love, Plaintiffs,

v.

MONTGOMERY COUNTY SHERIFF'S
DEPARTMENT, et al., Defendants,

Albert B. Dodson, et al., Defendant–
Intervenors.

No. Civ.A. 82–T–717–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 20, 2000.

M. Wayne Sabel, Sabel & Sabel, P.C., Montgomery, AL, for Sallie Williams, plaintiff.

David George Flack, Montgomery, AL, for Travis A. Parker, intervenor-plaintiff.

Cynthia Williams Clinton, Tyrone Carlton Means, Kenneth Lamar Thomas, Robert M. Weinberg, John W. Adams, Jr., Thomas, Means, Gillis, Devlin, Robinson &

Seay, PC, Montgomery, AL, for Montgomery County Sheriff's Department, defendant.

Thomas T. Gallion, III, Haskell, Slaughter, Young & Gallion, Montgomery, AL, Robert M. Weinberg, Montgomery, Al, for Montgomery County Commission, defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this 18–year old lawsuit, the plaintiffs, who are female officers in the Sheriff's Department for Montgomery County, Alabama, obtained relief from sex discrimination and harassment. The defendants are the Sheriff's Department and several departmental and other county officials. This lawsuit is now before the court on the defendants' motion to terminate. Based on the evidence presented, the court concludes that the motion should be granted.

## I. BACKGROUND

Much of the long history of this litigation is documented in reported cases. Nevertheless, the court will present a general overview to facilitate proper consideration of the defendants' motion to terminate.

### A. 1985 Consent Decree

This lawsuit commenced in 1982 when Lois Johnson, a female deputy sheriff in Montgomery County, brought a sex discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17.[1] In 1983, the court certified a plaintiff class of "all past, present, and future female employees of the Montgomery County Sheriff's Department." *Johnson v. Montgomery County Sheriff's Dept.*, 99 F.R.D. 562, 566 (M.D.Ala.1983) (Thompson, J.).

Two years later, in 1985, the court approved and entered a consent decree adopting a settlement negotiated by the parties. *See Johnson v. Montgomery County Sheriff's Department*, 604 F.Supp. 1346 (M.D.Ala.1985) (Thompson, J.). The settlement provided for widespread, specific opportunities for current and prospective female employees of the Sheriff's Department. The department agreed to change its job descriptions and advertising efforts to recruit more women. It promised new hiring policies, subject to class approval, and, specifically, the department agreed to hire women for the next six available positions, and thereafter by a ⅓ ratio until 25 % of deputy sheriffs were women. Similarly, the department proposed new promotion policies, subject to class approval, and it reevaluated a previous promotion round so as to give female employees another opportunity to advance in the ranks. Furthermore, the settlement provided detailed safeguards for equal treatment of women in job and shift assignments and transfers.

### B. 1986 Consent Decree

In 1986, the plaintiffs filed a request for additional relief. In a 1986 supplemental consent decree resolving the dispute, the department agreed to hire an independent professional consultant, mutually selected by the parties, to develop temporary and eventually permanent promotion procedures for all ranks as required by the 1985 decree. *See* Order, entered July 24, 1986, at 5.

### C. 1990 Injunction

In 1988, the plaintiffs charged that the department was continuing to discriminate against women in violation of the 1985 consent decree and Title VII. As a result of this round of litigation, the court rendered a judgment in 1990 finding that the department had discriminated and retaliated against female employees, and entered

---

**1.** This lawsuit was originally styled *Johnson v. Montgomery County Sheriff's Department.* The style changed when Sallie Williams and Johnie Love replaced Johnson as named plaintiffs.

a permanent injunction prohibiting the department and its officers from engaging in sex discrimination and retaliation, and requiring the department to take affirmative and immediate steps to remedy and address sexual harassment and discrimination within the department. The court also required that the department fashion new, nondiscriminatory procedures regarding promotions, discipline, transfers, and job assignments. *See Sims v. Montgomery County Comm'n,* 766 F.Supp. 1052 (M.D.Ala.1990) (Thompson, J.).[2]

### D. Dodson Intervenors

In 1990, the court permitted a group of white male deputies, collectively called the 'Dodson intervenors,' to intervene in this litigation. On May 18, 1992, the court certified the Dodson intervenors as a class for the purpose of challenging promotion procedures within the department.

### E. Sheriff's Manual of Policies and Procedures

On May 7, 1991, the defendants submitted to the court for review and approval a proposed Manual of Policies and Procedures for the Montgomery County Sheriff's Office. The manual was offered to satisfy the requirements, set forth in the 1990 injunction, that the department adopt a permanent plan to redress sexual harassment and provide nondiscriminatory procedures regarding discipline, transfers, and job assignments. *See Sims v. Montgomery Cty. Comm'n,* 766 F.Supp. at 1079–80. By order and injunction entered July 25, 1991, the court approved the manual and ordered the defendants to implement the manual forthwith.

### F. Promotion Procedures

In January 1992, again as required by the 1990 injunction, the Sheriff's Depart-ment submitted new, nondiscriminatory interim promotion procedures, and these procedures were approved by the court on January 13, 1992. The interim plan did not establish policies and procedures for promotions, but instead provided for procedures by which women in the department could file objections within seven days to the specific promotion selections later made under this interim plan if the promotion procedures would "result in adverse impact against a protected class or otherwise violate the rights of a protected class under an outstanding Court order." Joint petition for approval of interim plan, filed January 7, 1992, at ¶ 1.

In January 1994, the department submitted new, nondiscriminatory, permanent promotion procedures. The final version of those procedures was submitted on October 20, 1994, with the agreement of all parties except the Dodson intervenors. The central feature of the promotion procedures was the utilization of banding. Under this concept, qualified candidates are tested and then grouped into two or more bands based on a range of scores. Candidates within a band are considered to be equally qualified. Each band is exhausted in turn beginning with the band with the highest scores. Selection within each band was based on a rank-ordered listing of the candidates created by promotions panels established by the department. On December 7, 1994, and July 3, 1995, these promotion procedures were approved by the court. *See Sims v. Montgomery County Commission,* 890 F.Supp. 1520 (M.D.Ala.1995) (Thompson, J.), *aff'd,* 119 F.3d 9 (11th Cir.1997) (table).

### G. Modification of Promotion Procedures

On November 12, 1997, the plaintiffs filed a motion for further relief alleging

---

**2.** The citation to the decision is styled as presented because this case was consolidated with another case, *Sims v. Montgomery County Comm'n,* civil action no. 3708–N (M.D.Ala.). In *Sims,* the court found that the Sheriff's Department was also discriminating against African–American officers, and the court ordered similar relief for the benefit of those officers. *See Sims v. Montgomery County Comm'n,* 766 F.Supp. 1052, 1080–1102 (M.D.Ala.1990) (Thompson, J.). The court terminated the *Sims* litigation and dismissed the case on June 9, 1998. *See Sims v. Montgomery County Commission,* 9 F.Supp.2d 1281 (M.D.Ala.1998) (Thompson, J.).

that the promotion procedures approved by the court in 1995 were not being administered in conformity with the court-ordered promotion plan. On June 18, 1998, the court found that the defendants had failed to comply with the promotion plan's requirements for establishment of an in-band selection procedure because the procedures employed by the Sheriff's Department were wholly subjective and unrelated to job responsibilities, thus rendering the process essentially meaningless. *See* Order, entered June 18, 1998, at 2. The court ordered the defendants to bring the in-band selection procedure into compliance with the court-ordered promotion plan and noted that the defendants could propose an alternative plan if all parties agreed.

On March 11, 1998, the defendants submitted a proposal for modified promotion procedures that utilized random computer ordering to facilitate in-band selection. The plaintiffs agreed to the implementation of some form of random-ordering plan; however, their random-ordering proposal differed from that of the defendants.[3] After noting that the in-band issue was the sole remaining dispute in this longstanding litigation, *see* Order, entered March 22, 1999, at 2, the court found that the defendants plan did not violate Title VII or the equal protection clause of the fourteenth amendment to the United States Constitution, and the modified promotion procedures were approved. *See Williams v. Montgomery County Sheriff's Department*, No. Civ.A. 82–T–717–N, 1999 WL 638202 (M.D.Ala. August 10, 1999) (Thompson, J.).

## H. Motion to Terminate

On April 7, 2000, after 18 years of litigation, the defendants filed a motion to terminate this lawsuit. The court required the defendants to give to all plaintiff class members appropriate notice of the motion, including notice of the procedures for lodging objections to the motion. After the court approved the parties' joint submission of proposed notice to plaintiff class, the defendants disseminated the notice to individual class members and obtained signatures acknowledging receipt of the notice. The defendants also posted copies of the notice in conspicuous areas of the department. The court conducted a fairness hearing on June 7, 2000.

The court concludes, as a threshold matter, that the notice and fairness hearing were sufficient under the Civil Rights Act of 1991. *See* 42 U.S.C.A § 2000e–2(n)(1).[4]

---

3. The key difference between the two proposals was that the defendants endeavored to rank all employees randomly within each band for a two-year period, make the ranking public, and promote candidates in the order of their computer-generated rank during that two-year period. The plaintiffs, on the other hand, wanted the defendants to select randomly one person and an alternate from the top band each time a position became available, and to forgo the implementation of a standing, public ranking of all employees. *See Williams v. Montgomery County Sheriff's Department*, civil action no. 82–T–717–N, 1999 WL 638202, at *2 (M.D.Ala. August 10, 1999) (Thompson, J.).

4. Section 2000e–2(n) provides:
   "Resolution of challenges to employment practices implementing litigated or consent judgments or orders
   (1)(A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a li-

tigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).
   (B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—
   (i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—
   (I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and
   (II) a reasonable opportunity to present objections to such judgment or order; or
   (ii) by a person whose interests were adequately represented by another person who

The notices advised recipients that their employment opportunities with the Sheriff's Department might be affected; they advised of the date, time, and place of the fairness hearing and the deadline for filing objections to the proposed termination; and they included specific information about how to present objections in writing and at the fairness hearing. The notices and fairness hearing were adequate to inform all department employees and other affected persons about the proposed termination of this litigation and to solicit and determine their views.

## II.  DISCUSSION

### A.  Dissolution Requirements

■ "It goes without saying the local autonomy of [law enforcement agencies] is a 'vital national tradition.'" *Freeman v. Pitts*, 503 U.S. 467, 490, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108 (1992) (quoting *Dayton Bd. of Education v. Brinkman*, 433 U.S. 406, 410, 97 S.Ct. 2766, 2770, 53 L.Ed.2d 851 (1977)). Returning governmental entities to the control of local authorities "at the earliest practicable date is essential to restore their true accountability to our governmental system." *Id.* Therefore, in addressing any statutory or constitutional violation by a police department or any other local governmental entity, a court's "end purpose" must be to remedy the violation and then to restore

authority to the local entity if it is "operating in compliance" with federal, state and constitutional law. *Id.*

■ In making the determination of whether to terminate relief and restore full control to a governmental entity, a court should be informed by, at least, the following three considerations: first, whether there has been full and satisfactory compliance with the court's outstanding orders; second, whether retention of judicial control is necessary or practical to achieve compliance with any outstanding orders; and, third and finally, whether the governmental entity has demonstrated to the public and to those of the disfavored group its good faith commitment to the whole of the court's orders and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Freeman*, 503 U.S. at 491, 112 S.Ct. at 1446 (articulating these factors in the context of a longstanding school desegregation case). In considering these factors, a court should give particular attention to the governmental entity's "record of compliance." *Id.* A local government is better positioned "to demonstrate its good-faith commitment" to a constitutional course of action when its policies exhibit a consistent pattern of lawful conduct directed at eliminating earlier violations. *Id.*

had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an *intervening change in law or fact.*
(2) Nothing in this subsection shall be construed to—
(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;
(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or
(D) authorize or permit the denial to any person of the due process of law required by the Constitution.
(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of Title 28."

## B. Defendants' Compliance with Orders

██ The evidence reflects that the objectives of all outstanding orders—for example, the 1985 consent decree, the 1986 consent decree, the 1990 injunction, and the 1999 order—have been achieved. Pursuant to the 1986 supplemental decree, the defendants obtained the assistance of the Auburn University–Montgomery Center for Business in developing content-valid selection procedures for hiring and promotion to ranks within the Sheriff's Department. Furthermore, the department's future content-valid selection procedures will be developed and administered by the Montgomery City–County Personnel Board, whose staff has been trained in the appropriate task requirements by the Center for Business. In addition, the personnel board has retained two consultants to assist in the development and administration of procedures; both consultants are affiliated with the Center for Business. The department has indicated its intent to continue making hiring and promotion decisions based on validated selection procedures.

To address the mandates of the 1990 injunction and the 1985 consent decree, the department created a Manual of Policies and Procedures that described prohibited acts of sexual harassment and set forth a complaint procedure to address alleged transgressions. The manual also provided non-discriminatory procedures with respect to discipline, transfers, and job assignments. The record reflects that there have been no valid complaints of sex discrimination filed pursuant to the procedures set forth in the manual, and this declaration is buttressed by the fact that the Equal Employment Opportunity Commission has not validated a charge of discrimination against the department since the implementation of the manual's policies and procedures.

As mentioned above, the parties indicated in 1999 that the sole issue remaining for

resolution was the establishment of a valid in-band selection procedure. The parties agreed that a random-ordering procedure would satisfy the mandates of prior decrees and injunctions, and the court approved the defendants' specific random-ordering procedure for implementation. Therefore, the sole remaining issue in this litigation has been resolved.

## C. Objections to Termination of Litigation

As noted above, the defendants properly notified class members of the proposed termination of this litigation. In response, the court has received only three objections to the proposed termination.

First, plaintiff class counsel filed a pleading which finds fault with the Sheriff's Department's promotion registers.[5] Particularly, the pleading asserts that several, if not all, of the promotion registers are no longer valid because they were created more than two years ago. Furthermore, class counsel finds that no provisions have been made to create new promotion registers and that no validation studies have been conducted to develop new job tests.

The revised promotion procedures provide that a promotion register shall be valid for two years from the date the register is established. The expired promotion registers referred to by class counsel represent registers that were used to fill past promotion vacancies. As explained by the defendants, expired registers will not be used for future promotions; rather, the department will create new promotion registers for each vacancy, as required by the decree.

Furthermore, class counsel's argument with respect to the absence of provisions for creating new promotion registers is not well-founded. As mentioned above, the Montgomery City–County Personnel Board will develop and administer content-

---

**5.** A 'promotion register' is a list of eligible candidates created for a promotion vacancy.

As stated above, the list is divided into bands of equally-qualified personnel.

valid selection procedures *as the need arises,* that is, when there is a promotion vacancy. The promotion provisions do not require continuous creation of promotion registers that serve no purpose. In addition, while a promotion register should be created for promotion vacancies, the decree does not require a recreation of selection tests each time a vacancy is available for a certain procedure. As long as a test is supported by the appropriate validation studies, it may be administered by the department to create promotion registers.

■ Two female deputy sheriffs also filed objections to the termination of this litigation. The deputies charge primarily that the department disparately effected or failed to effect transfers and assignments with respect to them and other female deputies. It suffices to note that there is no evidence that either of the objectors has attempted to raise any of their complaints through the departmental grievance procedures, sought to intervene in this action, filed a separate civil action, or filed a charge of discrimination with the Equal Employment Opportunities Commission. None of the objections adequately identifies any systemic violation of any outstanding order so as to controvert the evidence of the defendants' substantial compliance. If either of the objectors has a viable claim (an issue the court declines to address here), she may pursue that claim through a separate action.

Insofar as the objectors argue that the presence of the court is needed to assure that the Sheriff's Department operates within the confines of the law, the court addresses their concern by adopting comments expressed in another then-longstanding case involving another law-enforcement agency:

> "To be sure, the Police Department will probably be the object of future lawsuits charging gender discrimination, and some of these lawsuits may even be found to have merit. But this court does not sit to *prevent* all future wrongdoing; a police department, like all governmental entities, is made up of humans, and the department simply cannot assure that its employees will never do wrong, that they will never engage in gender discrimination in the future. Indeed, even under the continued eye of the court, there can be no absolute assurance that a supervisor or a co-worker will not engage in gender discrimination. What the department can do, and has done here, is to take reasonable steps to decrease the likelihood of such discriminatory conduct in the future. Thus, the mere fact that there may be impermissible discrimination in the future does not, by itself, warrant the continued assumption of court control over a governmental entity for past misconduct."

*Jordan v. Wilson,* 951 F.Supp. 1571, 1582–83 (M.D.Ala.1996) (Thompson, J.).

## III. CONCLUSION

Accordingly, the court finds that the defendants have complied with all requirements imposed by the outstanding orders of the court and, thus, the first factor—whether there has been full and satisfactory compliance with the court's outstanding orders—has been satisfied. The second and third factors—whether retention of judicial control is necessary or practical to achieve compliance with outstanding orders, and whether the governmental entity has demonstrated to the public and to those of the disfavored group its good-faith commitment to these orders—have been satisfied as well.

The court concludes that it is time to return its remaining control over the personnel practices of the Montgomery County Sheriff's Department to the defendants, subject, of course, to the usual methods of maintaining accountability inherent in a democratic system and under the rule of law. Accordingly, the court agrees with the defendants that all outstanding orders are due to be dissolved, and this litigation

dismissed in its entirety. An appropriate judgment will be entered.