Gwendolyn **JOHNSON**, individually and on behalf of her minor child, Charles James Johnson; and Susan Brewer, all individually and on behalf of all others similarly situated, Plaintiffs,

v.

William H. **ROBINSON**, Director, Cook County Department of Public Aid; Harold O. Swank, Director, Illinois Department of Public Aid; William G. Clark, Attorney General of the State of Illinois, Defendants.

Civ. A. No. 67 C 1883.

United States District Court
N. D. Illinois, E. D.

Dec. 28, 1967.
Judgment Affirmed May 5, 1969.
See 89 S.Ct. 1622.

Robert W. Bennett, Arthur K. Young, Chicago, Ill., Sheldon Nahmod, Evanston, Ill., for plaintiffs.

William G. Clark, Atty. Gen., State of Illinois, John J. Stamos, State's Atty., Cook County, Illinois, Daniel P. Coman, Asst. State's Atty., Cook County, Ill., for defendants.

Before, FAIRCHILD, Circuit Judge, and LYNCH and NAPOLI, District Judges.

FAIRCHILD, Circuit Judge.

This is an action for injunction against enforcement of certain provisions of the Illinois Statutes upon the ground of their unconstitutionality. The challenged provisions require an applicant for certain welfare aids to have continuously resided for one whole year in this state immediately preceding the application for aid.[1]

Plaintiff Gwendolyn Johnson is a citizen of the United States and a resident of Chicago, Illinois, whose application for aid to dependent children or general assistance has been denied because her present period of continuous residence in Illinois is less than one year. She sues individually, and on behalf of her two minor children, and all others similarly situated.

Plaintiff Susan Brewer, is a seventy-four year old widow who is citizen of the United States and a resident of Evanston, Illinois, whose application for aid to the aged or for general assistance had been denied before commencement of this action because her present period of continuous residence in Illinois is less than a year. She sues individually and on behalf of all others similarly situated.

Defendants are state and county officers charged with administration of the statutes in question, as well as the attorney general of Illinois.

Plaintiffs moved for a preliminary injunction. Each defendant moved to dismiss. A hearing was held on these motions on December 11, 1967.

On the basis of the present record, and for the purpose of the motion for preliminary injunction, we find the facts and reach the conclusions stated herein.

Prior to 1964 Mrs. Johnson lived with her aunt and uncle in Georgia. After they moved to Chicago she went to college in Arkansas, but visited frequently in Chicago. After she married she moved to New Jersey with her husband.

On April 10, 1967, she, her husband, and child moved to Chicago so her husband could seek work and she could be near her aunt and uncle. Near the end of April her husband deserted her. Since living in Illinois Mrs. Johnson, who has recently given birth to her second child, has stayed in the crowded apartment of her aunt and uncle. Mrs. Johnson is without financial resources and has been living by the generosity of

---

1. The requirement is found in ch. 23, Smith-Hurd Illinois Annotated Statutes, §§ 3–1.1 (aid to aged, blind or disabled); 4–1.5 (aid to dependent children); 6–1.1 (general assistance).

her aunt and uncle. She asserts that she is eligible for aid to dependent children as well as general assistance except for the residence requirement, and the record does not show her otherwise ineligible.

Susan Brewer was born in Ireland on June 22, 1893. She came to Evanston, Illinois, in 1922 where she acquired American citizenship. She has resided in Evanston since her arrival in the United States except for the period of November, 1964 to August, 1967, when she lived with her daughter in California. When her daughter moved back to Illinois, Susan Brewer returned to Evanston. The only source of income is a small monthly social security check.[2] She asserts that she is eligible for aid to the aged, except for the residence requirement, and the record does not show her otherwise ineligible.

### Motions to Dismiss.

■ Defendant Robinson, director of Cook County department of public aid, moved to dismiss the action as to him because he was only an agent of defendant Swank who is director of public aid for the state. Since defendant Robinson directs all categorical aid in Cook County and all general assistance in the city of Chicago, he is properly a party to this suit.

■ Defendants Swank and Clark move to dismiss as to themselves on several grounds. First, they contend that the Civil Rights Act[3] does not grant jurisdiction in cases involving alleged denials of the equal protection clause of the Fourteenth amendment. They cite Ortega v. Ragen.[4] That decision is distinguishable on its facts. There are a number of decisions recognizing a claim of denial of equal protection under sec. 1983, in circumstances comparable to the present ones.[5]

■ Second, defendants contend that plaintiffs have failed to exhaust administrative remedies. While ch. 23 § 11–8 [6] does allow administrative review from adverse decisions concerning categorical aid and while ch. 23, § 11–8.7 [7] does provide for judicial review, such review, even if it culminated in setting aside the residence requirement, which defendants do not suggest would happen, is not an adequate remedy in view of the immediacy of plaintiffs' needs.[8]

■ Defendant, William G. Clark, Illinois' attorney general, who seeks dismissal, has some duties under the welfare laws but those duties are not relevant to the problem presented here.[9]

We deny these motions to dismiss except that we grant the motion to dismiss as to defendant Clark.

### Equal Protection of the Laws.

■ Plaintiffs in this action are residents of Illinois, are in need, and (except for duration of residence) would seem to be eligible for categorical or general assistance. The provisions under attack

---

2. Since commencement of this suit Mrs. Brewer has received some temporary emergency general assistance for a period of thirty days under Smith-Hurd Illinois Annotated Statutes, ch. 23, § 6–1.1. The temporary grant was made because of the possibility that she may persuade the authorities that she did not lose residence in Illinois while in California.

3. 42 U.S.C. § 1983, read together with 28 U.S.C. § 1343(3).

4. (7th Cir. 1954), 216 F.2d 561.

5. See McNeese v. Board of Educ. (1963), 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Adams v. City of Park Ridge (7th Cir. 1961), 293 F.2d 585. See also Moss v. Hornig (2d Cir. 1963), 314 F.2d 89 where Ortega is distinguished.

6. Smith-Hurd Illinois Annotated Statutes.

7. Id.

8. McNeese v. Board of Educ. (1963), 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622.

9. Smith-Hurd, Illinois Annotated Statutes, ch. 23, § 10–15, for enforcement of orders against responsible relatives; § 12–16 for recovery of financial aid.

divide the entire group of needy and eligible Illinois residents into two classes: Aid is denied (except for temporary emergency general assistance) to the class, which includes plaintiffs, who have resided in the state less than one year immediately past. Aid is granted to those who have resided continuously within Illinois for the past year.

The ultimate question is whether the classification is reasonable in the light of some proper legislative purpose. If not, the provision denies equal protection of the laws.

The question has recently been decided adversely to defendants in several other districts.[10] A portion of the opinion in *Ramos, supra,* is attached as an appendix to this opinion, and the views expressed therein are adopted for the purpose of this motion.

Defendants contend that the provision for temporary general assistance in hardship cases sufficiently blunts the discriminatory effect of the otherwise applicable one year residence requirement to defeat plaintiffs' claim. Defendants have not produced evidence as to the degree to which the provision alleviates the situation of needy recent arrivals, and for the purpose of this motion we find that it is not readily made available on any basis to applicants who lack the residence requirement.

We conclude that plaintiffs are entitled to a preliminary injunction, enjoining defendants, their successors, and persons under their control from denying to an applicant aid to the aged, blind or disabled, aid to dependent children, or general assistance where such denial is based upon lack of fulfillment of the one year residency requirements of the Illinois Public Welfare Code. Counsel for plaintiffs are directed to prepare and submit to defense counsel and the court a suitable form of decree.

### Class Action.

Under Rule 23 [11] we hereby determine that this is a properly maintained class action. The class is made up of all those residents of Illinois who need welfare aid or general assistance in the state and who have failed to reside therein for one year immediately past. Under the circumstances the best practicable notice to members of the class represented by plaintiffs is the coverage by the news media which will result from the filing of this decision. The members of the class are hereby notified that the court will exclude anyone from the class if he so requests within 30 days of the filing date; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel.

We emphasize that what has been said in this opinion is based on the pleadings and affidavits and the submission by the parties of legal issues upon a motion for preliminary injunction, and the decision at this time is limited to the granting of such injunction. In the nature of a case where the main or sole issues are of law, the decision on preliminary injunction tends to be the decision on the merits. We do not, however, foreclose a trial if any party considers there are issues of fact or further briefing and argument on the law if desired. We direct each party to inform the court within 30 days from the date the opinion is filed whether he wishes a trial in order to establish facts, or a hearing on issues of law. After learning the desires of the parties, we will determine the course

---

10. Ramos v. Health and Social Services Board (E.D.Wis. Nov. 21, 1967) 276 F. Supp. 474; Harrell v. Tobriner (D.D.C., Nov. 8, 1967) 279 F.Supp. 22; Thompson v. Shapiro (D.Conn.1967), 270 F.Supp. 331; Green v. Department of Public Welfare (D.Del.1967), 270 F.Supp. 173. A preliminary injunction was granted in Pennsylvania, Smith v. Reynolds (D.Pa. June 1, 1967), and a temporary restraining order has been issued in Maryland, Mantell v. Dandridge (D.Md. Oct. 24, 1967).

11. F.R.Civ.P.

of further proceedings herein, or proceed to final disposition.

### APPENDIX

Excerpts from Ramos v. Health and Social Services Board (E.D.Wis., Nov. 21, 1967), 276 F.Supp. 474, 477-78.

We have considered the purposes which might be thought to be served by a provision of this sort, whether such purpose is a proper legislative purpose, and whether the provision is reasonable in the light of such purpose.

By definition, the one year residence requirement is not a waiting period required of all applicants. Whatever arguments might be legitimately made in favor of a waiting period required of every applicant, regardless of length of residence, they can not reasonably be used to support a provision whereby aids are denied to all needy and otherwise eligible applicants who have resided in the state less than one year and granted to applicants similarly situated with respect to need and eligibility, but who have resided here for more than one year.

And because the residence required here is one year, we need not consider whether there are distinct considerations which might support a requirement of a relatively short period of residence.

■ Purposes which the one year residence requirement might be thought to serve appear to be as follows: (1) To make it unprofitable for a nonresident to come to Wisconsin for the purpose of drawing welfare aid payments; (2) to discourage nonresidents from coming to Wisconsin for other purposes unless they are certain of their ability to sustain themselves for the first year; and (3) to encourage or compel recent arrivals who find themselves in need to leave Wisconsin, presumably to return to their previous homes.

In our opinion, purposes (2) and (3) are not proper state legislative purposes.

In Edwards v. California[9] the Supreme Court held invalid a California statute which prohibited anyone from

9. (1941), 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119.

bringing an indigent person into California. The statute had the overall purpose of protecting the state and local public treasuries, as does the statute at bar. The majority in *Edwards* held the California statute an unconstitutional barrier to interstate commerce. It is true the one year residence requirement does not interfere as directly with interstate movement as did the California statute, but it is significant that the majority concluded that the state's desire to protect its treasury from applications for aid by recent arrivals did not justify interference with interstate movement.

Moreover four members of the court [10]

10. Concurring opinion of Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Murphy joined, and concurring opinion of Mr. Justice Jackson.

concluded that citizens of the United States have a right, regardless of their economic condition, to seek their fortunes in states of their choice, a right which the state can not abridge.

■ It follows, we think from either theory, that a state can not justify a classification of its needy residents which operates to discourage nonresidents from coming to the state and to force recent arrivals to leave.

We surmise that purpose (1) is the purpose most widely thought to be served by the one year residence requirement. It is our impression that people of any state are inclined to believe that the level of aids in their home state is higher than elsewhere and that if there is no lengthy residence requirement, nonresidents who are willing to live on public aids will move into the home state to enjoy a higher level of aid payments.

Purpose (1) and purpose (2) are both based on an assumption that poor people throughout the country have a considerable knowledge of the welfare laws of the various states, and take them into consideration in a decision to move. The factual basis for the assumption is dubious. There have been studies which indicate that people are motivated by employment, better opportunities, better liv-

ing conditions, the presence of friends and families, and the like.[11]

11. See New York State Department of Social Welfare, The Movement of Population and Public Welfare in New York State (1958); Greenleigh Associates, Inc., Facts, Fallacies, and Future (1960); A Study of Families from the Southern Appalachian Region Receiving Public Assistance (1960); A Follow-Up Study of General Assistance Applications to Determine Possible Changes in Their Characteristics (1961); The Blackboard Curtain (1962); Characteristics of General Assistance Applicants (1965).

Even if we assume, however, that some people move in order to enjoy a greener welfare pasture, and that a state may properly deny aid payments to persons who come with that intent, we think the one year residence requirement is not reasonable in the light of such purpose. It has the effect of a conclusive presumption that all people who need aid within a year have come for that purpose. It not only exerts the duress of the denial of the necessities of life upon people who have been so motivated, but also upon others who have come for different reasons, and upon children who have exercised no choice in the matter. In our opinion, the presumption of validity is overcome.

We are aware that the one year residence requirement enjoys some implication of congressional approval, since Congress selected one year as the longest period of residence which could be required by any state without disqualifying the state's program from federal participation.[12] The question, however,

12. See 42 U.S.C. secs. 302(b) (2), 602(b) (2), 1202(b) (1), and 1352(b) (1).

is whether the state statute violates the fourteenth amendment, and approval by Congress does not control. We have already cited the decisions of three district courts invalidating one year residence requirements [fn. 7]. In one of them, Harrell v. Tobriner, 279 F.Supp. 22, the court dealt with a one year residence requirement imposed by Congress in the District of Columbia, and held that it violated the due process requirement of the fifth amendment.