George W. DAVIES, et al.

v.

CONTINENTAL BANK.

Louis E. WAXMAN, et al.

v.

SHEARSON LEHMAN
BROTHERS, INC. et al.

(In re Continental Bank/Sheldon
Somerman & Entities Bank
Loan Litigation).

M.D.L. 745.
Civ. A. Nos. 86–6508, 86–7516.

United States District Court,
E.D. Pennsylvania.

Nov. 16, 1988.

James G. Rosenberg, Scott D. Patterson, Saul, Ewing, Remick & Saul, Abramson, Cogan, Kogan & Freedman, Mark E. Kogan, Philip P. Kalodner, David H. Marion, Robert E. Welsh, Jr., Philadelphia, Pa., Nicholas E. Chimicles, Alfreda L. Veratti, Greedfield & Chimicles, Haverford, Pa., for plaintiffs.

Leonard Dubin, Goncer M. Krestal, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Charles K. Reasonover, Deutsch, Kerrigan & Stiles, New Orleans, La., for Continental Bank.

David C. Franceski, Jr., C. Clark Hodgson, Jr., Jane Landes Foster, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Shearson Lehman Bros., Inc.

## MEMORANDUM

NEWCOMER, District Judge.

The parties to this action seek an Order pursuant to Fed.R.Civ.P. 23(e) and 23.1 approving the proposed settlement of these actions in accordance with the Settlement Agreement executed on January 21, 1987.[1] Pursuant to the proposed settlement, in exchange for the consideration described in the Settlement Agreement, these actions would be dismissed with prejudice and without costs. On July 26, 1988, this Court issued an Order directing that a hearing be held to determine whether the proposed settlement is fair, reasonable and adequate, and whether judgement should be entered dismissing the actions. Notice of the proposed settlement and of the hearing was duly given to all members of the class in each action. The hearing was held, as scheduled in the Class Notice, on September 28, 1988.

---

1. The initial Settlement Agreement was amended on December 28, 1987, February 23, 1988 and April 30, 1988. The amended Settlement Agreement shall be referred to herein as the "Settlement Agreement".

Plaintiffs' counsel and defense counsel appeared at the hearing and expressed support of the Settlement Agreement. No objections to the settlement were received by the Court. Based upon the submissions of all counsel and the presentations made at the September 28, 1988, hearing I will approve the settlement.

## I. *Factual Background.*

The above-captioned class actions are part of Multidistrict Litigation No. 745. The two class actions consist of the "Davies Action", Civil Action No. 86–6508, and the "Waxman Action", Civil Action No. 86–7516 (collectively the "Class Actions").

Plaintiffs in the Class Actions asserted securities fraud claims pertaining to the sale of interests in specific limited partnerships which were formed to invest in oil drilling ventures (the "Limited Partnerships"). These oil drilling programs were organized, operated and promoted by Sheldon S. Somerman ("Somerman") and various companies owned or controlled by Somerman (the "Somerman Companies"). By Order dated July 26, 1988, I certified the name plaintiffs in each action as representatives of a class consisting of all persons who purchased interests in these Limited Partnerships.[2] A brief description of the claims brought in these actions is in order.[3]

### A. *The Davies Action.*

The Davies complaint alleges that the defendant, Continental Bank ("Continental"), as a principal lender to Somerman and the Somerman Companies, directly participated in, and aided and abetted, a fraudulent scheme by which Somerman and the Somerman Companies sold limited partnership interests. It was allegedly represented to investors that the proceeds from the sales of these interests would be used for the drilling of oil wells, when, in reality, the Somerman Companies intended to use, and

did use the proceeds to repay existing loan obligations to Continental.

The complaint sought to hold Continental directly liable as a seller of securities, because the sale of limited partnerships to the plaintiff class was substantially for Continental's benefit. The plaintiff class asserts that Continental knew that the Somerman Companies were making material misrepresentations in connection with the sale of these securities. Continental continued to loan and advance money to to the Somerman Companies long after Continental knew, or in the absence of recklessness should have known, that the debts could not be paid. This practice, the complaint alleges, was designed to keep the Somerman Companies afloat until the later fraudulent sales of Limited Partnership interests.

The Davies complaint alleges that Continental violated § 10(b) of the Securities Exchange Act of 1934, § 12(2) of the Securities Act of 1933 and the Racketeering Influenced Organizations Act ("RICO"). Also alleged are common law fraud, conspiracy and conversion and various violations of the Pennsylvania Securities Act of 1972.

### B. *The Waxman Action.*

The complaint in the Waxman Action asserts that defendant, Shearson Lehman Brothers, Inc. ("Shearson"), along with other brokers which sold interest in the Limited Partnerships, either knew, or in the absence of due diligence should have known, that the private placement memoranda issued to members of the plaintiff class in connection with the sale of interests in the Limited Partnerships were materially false and misleading. It is alleged that both (1) their failure to disclose the intent of Continental to have the investment used primarily to pay the existing loans and, (2) the brokers' failure to accurately set forth the financial condition of the Somerman Com-

**2.** Members of the plaintiff class were given the opportunity to exclude themselves from the class by filing a written request for exclusion on or before September 28, 1988. All members of the plaintiff class who elected to exclude themselves have the right and opportunity to opt

back into the plaintiff class by November 30, 1988.

**3.** The complex nature of the facts of these actions renders a full development of all facets of the facts impracticable.

panies rendered the placement memoranda legally defective. The complaint alleges that Shearson and other brokers violated § 10(b) of the Securities Exchange Act of 1934, and Securities Exchange Commission Rule 10b–5, § 12(2) of the Securities Act of 1933 and RICO. Also alleged are common law conversion, fraud and conspiracy, as well as violations of the Pennsylvania Securities Act of 1972.

## II. *Settlement Terms.*

The terms of the proposed settlement are set forth in detail in the Settlement Agreement dated January 21, 1987. The Settlement Agreement was complicated by the fact that the Somerman Companies, which were among the alleged primary wrongdoers, and which are responsible for the ongoing operation of the oil wells involved, became debtors in Chapter 11 cases still pending in the United States Bankruptcy Court. Also, the Limited Partnerships were threatened with foreclosure on various lien claims. These complications, in addition to the complex nature of the underlying claims have resulted in an elaborate settlement agreement.

Termination of the operations of the Limited Partnerships would eliminate a possible return on the investment for members of the plaintiff class. The termination of operations could also jeopardize past and future tax deductions for the class. For these reasons the counsel for the class, in cooperation with counsel for the Committee of the Limited Partnerships, formed in conjunction with the bankruptcy cases, attempted to negotiate a settlement which would encompass the lien claims as well as all claims in the these securities actions.

Pursuant to the Settlement Agreement, Continental paid $6,000,000 into escrow on February 18, 1987 (the "Settlement Fund"). Continental also agreed to (1) pay $5,000,000 toward the costs of funding a plan of reorganization in the bankruptcy cases; (2) release or assign the lien claims against the Limited Partnerships assigned to it in the plan for reorganization for the benefit of the Limited Partnerships; (3) pay $1,000,000 and transfer certain security interests

and overriding royalty interests to a "Rehabilitation Trust Fund" for the benefit of the Limited Partnerships; (4) renegotiate equipment leases between certain of the Limited Partnerships and the Somerman Companies which were financed by Continental; (5) terminate, waive and release any and all security interests that it has in various residual interests in the Limited Partnerships; (6) terminate, waive and release any security interests that Continental has in certain common operating facilities; and (7) pay a maximum of $500,000 for attorney fees incurred by the official Committee of Limited Partnerships in the Chapter 11 cases.

The Settlement Fund was invested in United States Treasury Bills and will continue to accrue interest until distribution. In March, 1988, the parties agreed to allocate $450,000 of this accrued interest from the Settlement Fund to supplement the reorganization plan of the Somerman Companies. In return Continental agreed: (1) to place $6,500,000 in escrow and provide $201,900 (the anticipated interest from the escrow principal) as additional funding for the reorganization plan of the Somerman Companies; (2) to release its liens on substantially all of the assets of the Somerman Companies and to waive its rights to the post-confirmation stock of one of the Somerman Companies so as to provide additional assets for the reorganization plan; and (3) to assume certain costs of administration of this settlement.

Any member of the plaintiff class who submits a Proof of Claim will be entitled to a share of the Settlement Fund. However, any Limited Partnership will be entitled to a share in the bankruptcy plan benefits only if (1) it has opted into the Plan of Reorganization of the Somerman Companies, and (2) its limited partners, whose aggregate investment equals or exceeds fifty-one (51%) percent of the total money invested in such Limited Partnerships, remain members of the plaintiff class.

In consideration for the Settlement Fund and the bankruptcy benefits which Continental has agreed to provide, each member of the plaintiff class who has not opted out

of the class will be deemed to have assigned to Continental all claims against a variety of persons and entities in connection with the sale of Limited Partnership interests, including the following: (1) all persons and entities who participated in the preparation of offering materials used by the Somerman Companies and the Limited Partnerships, (2) all broker-dealers, selling agents and investment advisors (including Shearson) and all officers, directors, employees and agents of the broker dealer who participated in the sale of Limited Partnership interests; (3) all current and prior general partners and special limited partners of the Limited Partnerships; and (4) Sheldon Somerman and the Somerman Companies. Continental would be exclusive and full owners of all such claims.

In addition, each member of the plaintiff class will be deemed to have released Continental from any claims which involve transactions between or among Continental, Somerman or the Somerman Companies. This release will pertain to claims relating to the offer or sale of interests in the Limited Partnerships or their legal relationships with the Somerman Companies.

The Settlement Fund has been allocated so that members of the plaintiff class who purchased Limited Partnership interests after July, 1985, will receive distribution in excess of those who purchased interests before July, 1985. This is consistent with the different evidentiary strengths of claims arising from the pre-July, 1985, claims versus the post-July, 1985, claims.

### III. *Discussion.*

It is long established that courts favor dispute resolution through voluntary compromise. *See Williams v. First National Bank of Pauls Valley,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Petty v. General Accident Fire & Life Assurance Co.,* 365 F.2d 419, 421 (3d Cir.1966). It is, therefore, "the policy of the law generally to encourage settlements." *Florida Trailer and Equipment Co. v. Deal,* 284 F.2d 567, 571 (5th Cir.1960); *Sherin v. Gould,* 679 F.Supp. 473, 474 (E.D.Pa.1987).

■ In class action cases Rule 23(e) of the Fed.R.Civ.P. provides, in pertinent part, that a "class action shall not be dismissed or compromised without the approval of the Court...." The Supreme Court has instructed that "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and the form of the relief offered in the settlement.... They do not decide the cases on their merits or resolve unsettled legal questions." *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed. 2d 59 (1981), *citing Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). *See also Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975). The approval of a proposed class settlement is within the sound discretion of the district court. *Id.* at 156; *Harris v. Pernsley,* 654 F.Supp. 1042, 1049 (E.D.Pa.), *aff'd* 820 F.2d 592 (3d Cir.), *cert. denied sub nom. Castille v. Harris,* — U.S. —, 108 S.Ct. 336, 98 L.Ed.2d 363 (1988). However, the Court's role is limited to approval or disapproval of the Settlement Agreement; it may not rewrite it. *Id.*

A class action settlement should be approved if it is "fair, adequate and reasonable" to the members of the class. *Walsh v. Great Atlantic and Pacific Tea Company, Inc.,* 726 F.2d 956, 965 (3d Cir.1983); *Harris, supra,* 654 F.Supp. at 1049. The Third Circuit has identified the following nine factors as relevant to a determination of the fairness of a proposed settlement:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the proposed settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and,

(9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.

*Girsh v. Jepson, supra,* 521 F.2d at 157; *Fickinger v. C.I. Planning Corporation,* 646 F.Supp. 622, 627 (E.D.Pa.1986).

In class action settlements, as with other settlements, the parties and counsel are typically in the best position to evaluate the settlement; their judgments are entitled to considerable weight. *Armstrong v. Board of School Directors of City of Milwaukee,* 616 F.2d 305, 325 (7th Cir.1980); *Sherin, supra,* 679 F.Supp. at 475; *Fisher Brothers v. Cambridge–Lee Industries, Inc.,* 630 F.Supp. 482, 489 (E.D.Pa.1985). All counsel to the parties have recommended approval of the settlement as fair and reasonable and the product of arms-length negotiations. The proposed settlement was unopposed at the settlement hearing. With an understanding that those in the best position to evaluate the settlement have recommended approval I shall now evaluate the relevant factors.

### A. *Complexity, Expense and Duration.*

The Class Actions are obviously complex in nature. The proposed settlement has required negotiations and agreement among numerous parties with a wide variety of interests. Without approval of the proposed settlement I seriously doubt whether the proposed bankruptcy plan of reorganization for the Somerman Companies could survive. Disapproval of the Settlement Agreement would likely create a "big bang" which would leave the interested parties strewn across an "expanding universe" of legal conflict in which the attorneys and the courts would have to provide some manner of order. Any litigation of these legal conflicts could create astronomical expense for the parties. In fact, the attorneys who have engineered and maintained this novel and complex plan should be commended for their efforts to avoid such costs.

There would also be a substantial delay in the recovery, if any, by the class if the Settlement Agreement were not approved. Given a period for additional discovery, the obligatory summary judgment motions, a trial estimated by counsel to last at least six weeks, post trial motions and expected appeals, the matter could last for years.

Also of import is the proposed settlement's impact on related litigation. These Class Actions are the centerpiece of Multidistrict Litigation No. 745. The settlement was designed by counsel to resolve virtually all of the claims arising out of the activities of the Somerman Companies. In sum, it is abundantly clear that this factor weighs heavily in favor of approval of the settlement.

### B. *Reaction of the Class.*

As stated, above, there were no objections to the proposed settlement received from members of the class. Given the complexity of the action and the number of interests involved this, in and of itself, weighs heavily in favor of approval.

### C. *State of Proceedings and Discovery.*

The parties signed the Settlement Agreement on January 17, 1987, a couple of months after the Davies Action was filed and less than one month after filing of the Waxman Action.[4] However, class counsel insisted that, as a condition of settlement, they be allowed sufficient discovery so as to assure themselves that the settlement was fair and reasonable. Numerous depositions and the review of hundreds of thousands of documents were part of this post-settlement discovery.

Thus, while the litigation was at an early stage when the settlement agreement was made, there has been a large investment of time and resources into discovery which

---

**4.** The speed of the settlement was largely due to the impending merger of Continental and Midlantic Bank. The two banks were interested in eliminating the uncertainty of such a large, pending litigation.

was used to create this proposed settlement. I find that this factor also weighs in favor of approval of the settlement.

### D. *Risks of Establishing Liability and Damages.*

Although it may be argued that the plaintiff class has solid legal footing on which to base its claim for liability, the size and complexities of the litigation increase the risks of establishing such liability to the satisfaction of a factfinder. Given that this action asserts claims for securities and RICO violations, with their numerous elements and amorphous legal standards, the risks of establishing liability remain substantial. This factor, thus, favors approval of the settlement, although not heavily.

Plaintiffs would face the difficulty of establishing the value of their interests in the Limited Partnerships as of the day they were purchased in order to prove damages. The speculative nature of the investments complicate such a determination. In any event, the complexity of this action again creates increased risk that the plaintiff class will not meet its burden in proving damages. This too favors approval of the settlement.

### E. *Risk of Maintaining Class Status and Ability of the Defendants to Withstand a Greater Judgment.*

The risks of losing class status in this case are almost nonexistent. This factor adds nothing to favor approval of the settlement. Also, the Court is without evidence to evaluate Continental's ability to withstand a greater judgment. Therefore, I presume that this factor does not favor approval of the settlement.

### F. *Range of Reasonableness of the Settlement Fund.*

The Court must review a settlement to determine whether it falls within a "range of reasonableness" and not simply whether it is the most favorable result possible. *Harris, supra,* 654 F.Supp. at 1052. In the Class Actions three factors firmly place the proposed settlement within the "range of reasonableness":

(1) it allows the continued viability of many of the partnerships by virtue of the reorganization which Continental's contribution makes possible;

(2) it provides the return of part of the investment through the class settlement; and,

(3) it improves of the chance of maintaining tax benefits of the investments.

### IV. *Conclusion.*

I find that the majority of the factors weigh heavily in favor of approval of the settlement. In light of these factors I find this settlement fair, adequate, reasonable and in the best interest of the class.

An appropriate Order follows.

### ORDER

AND NOW, this 15th day of November, 1988, it is hereby ORDERED and DECREED that:

1. The members of the Plaintiff Class shall be as described in the attached Memorandum excluding all persons who timely filed a request to be excluded from the Plaintiff Class, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure.

2. The proposed settlement set forth in the Settlement Agreement dated January 21, 1987, as amended, is in all respects fair, adequate, reasonable and proper, and in the best interests of the Plaintiff Class, and is approved. Capitalized terms not otherwise defined in this Order or the Memorandum shall be defined as set forth in the Settlement Agreement dated January 21, 1987.

3. Notice to the Plaintiff Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been given in an adequate and sufficient manner, complying in all respects with the Federal Rules of Civil Procedure and due process, including but not limited to, the forms of notice and the methods of identifying and giving notice to members of the Plaintiff Class.

4. Class Counsel and counsel for the defendants shall implement the terms of the Settlement Agreement, as amended. The Effective Date shall be the first busi-

ness day ten (10) days after the expiration of the period within which appeals may be taken from this Order and the exhaustion of any such appeals. On that date, Continental Bank and its counsel shall take any and all actions, and execute any and all documents, necessary to permit designated Class Counsel to become the sole Escrow Agent(s) for the Settlement Fund and any accrued interest thereon. The remaining Escrow Agent(s) shall pay or cause to be paid the sum of Four Hundred Fifty Thousand ($450,000) Dollars toward the funding of the Plan approved by the Bankruptcy Court. Class Counsel shall make no disbursements from the Settlement Fund or any accrued interest thereon until further order by this Court.

5. On the first business day fifteen (15) days after the expiration of the period within which appeals may be taken from this Order and the exhaustion of any such appeals, Continental Bank shall: (i) pay or cause to be paid One Million ($1,000,000) Dollars, and, if requested to do so by the Trustees of the Rehabilitation Trust, shall transfer the security interest and overriding royalty interest identified in paragraph 3(A) of Exhibit "A" to the Settlement Agreement, to Ron Goldberg and Edward Fitzgerald, Administration Trustees under the Rehabilitation Trust Fund Agreement, in trust, pursuant to the terms of the Rehabilitation Trust Agreement; (ii) execute and deliver to Committee Counsel all documents necessary to terminate, waive, release or assign any and all security interest which Continental Bank has or may have in the Common Operating Facilities; (iii) terminate, waive, release or assign any and all security interests that Continental Bank has or may have in the Residual Interests; and (iv) pay all sums, and perform all other obligations it has undertaken, in connection with the Fourth Amended and Restated Plan of Reorganization confirmed by the Bankruptcy Court.

6. Except as provided herein, the Davies Action is dismissed in its entirety, with prejudice, on the merits and without costs, with regard to all claims which the members of the Plaintiff Class, or any of them, with the exception of the persons referred to in paragraph 1 hereof who have submitted timely requests to be excluded from the Plaintiff Class, have or might have asserted against Continental Bank and its predecessors and successors in interest, including, without limitation, successors by merger, reorganization or other similar transaction, and each past, present or future parent, subsidiary, related or otherwise affiliated entity, or any partner, principal, director, officer, employee, agent, representative, assignee, beneficiary or administrator of any of them, with respect to the purchase or sale of an interest in the 1985 Limited Partnerships.

7. The members of the Plaintiff Class shall be deemed to have assigned to Continental all claims, causes of action, demands and rights which he may now have arising out of or related to the acts or omissions of any of the following persons and entities, including, without limitation, attorneys and accountants, in connection with the sale of interests in the 1985 Limited Partnership: (a) all persons or entities who participated in the preparation of offering memoranda and materials used by Somerman, Monroe, Tullos, Evergree, SSM and Metro, and their past and present officers, directors, and general partners, Evergreen Tangible Leasing, Inc., Metro Equity, Inc., Craft Laminating, Inc., Somerman Associates, Inc., Somerman and Messenger Partnership, Metro Care, Inc., Cahan Somerman and Spewak Partnership (collectively the "Somerman Group") or the 1985 Limited Partnerships in connection with their oil and/or gas programs; (b) all broker-dealers, selling agents and investment advisors and all officers, directors, employees and agents of broker-dealers who participated in the sale of interests in the 1985 Limited Partnerships; (c) all current and prior general partners and special limited partners of the 1985 Limited Partnerships; (d) Sheldon Somerman and the Somerman Group. Continental Bank shall then be the exclusive owner and holder of all said claims, causes of action, demands and rights with full power and authority to exercise, transfer, assign, release or extinguish same.

8. The members of the Plaintiff Class shall be deemed to have released Continental Bank, its predecessors and successors in interest, including without limitation, successors by merger, reorganization or other similar transactions, and each past, present or future parent, subsidiary, related or otherwise affiliated entity or any partner, principal, director, officer, employee, agent, representative, assign, beneficiary, or administrator or any of them (collectively the "Releasees") of and from any and all manner of actions and causes of actions, suits, obligations, claims, debts, demands, agreements, promises, liabilities, controversies, costs, expenses and attorneys' fees whatsoever, whether raised affirmatively or by way of defense, whether based on any federal law, state law or common law right of action or otherwise foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which such member of the Plaintiff Class or the Limited Partnerships, or any General Partners of the Limited Partnerships, ever had, now have, or can have, or shall or may hereafter have, either individually, as a member of a class, or on behalf of the Releasees, by reason of, based upon, arising from, or in any way related to, acts, facts, events, transactions, statements or omissions, which involve any transaction between or among Continental Bank and either Sheldon S. Somerman or the Somerman Group relating to the offer or sale of interests in the Limited Partnerships, the operations or relationships, contractual or otherwise, with the Somerman Companies, or any of them. This release shall not operate to discharge the liability of any other person to any members of the Plaintiff Class arising from or in any way connected to their acquisition or ownership of interests in the Limited Partnerships. Any such unreleased claims that arise out of the sale of interests in the 1985 Limited Partnerships will be assigned to Continental, as described in paragraph 7.

9. The Waxman action is hereby dismissed, without prejudice, pursuant to Rules 41 and 23(e) of the Federal Rules of Civil Procedure.

10. This Court shall retain jurisdiction as to all matters relating to the implementation, administration and consummation of the Settlement, and to the award of counsel fees and reimbursement of expenses.

11. This Order shall be entered as a Judgment with respect to all members of the Plaintiff Class.

AND IT IS SO ORDERED.